I/S

1  GARY S. HANN, pro se
2  Plaintiff
   yragnnah@gmail.com
3  P.O. Box 711
   Cathedral City, CA 92235-0711
4  734-480-4140

```
┌─────────────────────────────┐
│            FILED            │
│  CLERK, U.S. DISTRICT COURT  │
│                             │
│         5/23/2022           │
│                             │
│ CENTRAL DISTRICT OF CALIFORNIA│
│  BY: _____NP_____ DEPUTY  │
└─────────────────────────────┘
```

FEE PAID

8                UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

|  |  |
|---|---|
| | Case No.   5:22-CV-00866-JGB-(SHKx) |
| GARY S. HANN, | |
| PLAINTIFF, | JUDGE: HON. _____ |
| VS. | MAGISTRATE JUDGE: _____ |
| International Brotherhood of Magicians (IBM), Society of American Magicians (SAM), and Bernard L. Pylitt, Defendants. | COMPLAINT FOR GRAVE DAMAGES FROM PERSONAL PHYSICAL INJURY AND PHYSICAL SICKNESS, DENIAL OF DISABILITY RIGHTS, PROHIBITED DISCRIMINATION, PRIVACY VIOLATIONS, AND BLATANT DISREGARD FOR PROTECTIVE CALIFORNIA MANDATES; AND, TO ENJOIN FROM ILLEGALLY OPERATING IN CALIFORNIA |
| | JURY TRIAL DEMANDED |

1

TO THE HONORABLE _____, UNITED STATES DISTRICT JUDGE, AND ALL INTERESTED PARTIES:

Now comes 100% Disabled Retiree and Plaintiff Gary S. Hann ("Hann"), who demands a jury trial and who deposes and says as follows:

## JURISDICTIONAL STATEMENT

1.   Diversity jurisdiction in federal court under 28 U.S.C. Section 1332 exists because the amount in controversy exceeds $75,000, and Plaintiff's citizenship differs from all defendants; the International Brotherhood of Magicians (IBM) is an Ohio Corporation with principal place of business in Ohio, the Society of American Magicians (SAM) is a New York Corporation, with a principal place of business in Colorado, and Bernard L. Pylitt is an attorney residing and working in Indiana.

## PREAMBLE

5.   Plaintiff Gary S. Hann ("Hann") is a 100% disabled retiree and who has been denied due process rights, ADA rights, and also inalienable State of California general and other rights.

6.   Hann brings this action with respect and deference, but simply cannot comprehend the violations of long settled law and the personal trauma intentionally caused him by Defendants.  Hann

brings this action without improper purpose, in good faith and in sincere belief that the claims made are correct, meritorious and predicated on a firm legal foundation, and therefore deserving of full consideration.

8.   Hann further avers that statements of fact herein are true and accurate to the best of his information, knowledge and belief, and that he is fully competent to testify thereto.

9.   Hann respectfully requests that this Honorable Court not reject this matter for technical or procedural reasons, but rather that this Court either correct such deficiencies sua sponte, or permit Hann to make such minor technical or procedural changes as may be found from time to time. *Haines v. Kerner*, 404 US 519, 520, 92 S.Ct. 594, 596 (1972).

10.   Hann additionally respectfully reminds the Court, and requests, that he be given any reasonable latitude in accordance with and as has been mandated by federal decisions and practice. *Castro v. US*, US No. 02-6683, 124 S.Ct. 786 (2003); *Boswell v. Mayer*, 169 F.3d 384 (6th Cir. 1999), *Jourdan v. Jabe*, 951 F.2d 108 (6th Cir. 1991).

## VENUE

11.   Venue is appropriately in this Court pursuant to 28 U.S.C. 1391(b)(1) and (2) because Plaintiff Hann resides in

3

Riverside County, CA, and has been heavily damaged in part within Riverside County, the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## GENERAL ALLEGATIONS APPLICABLE THROUGHOUT AS TO ALL DEFENDANTS

### AND ALL COUNTS

12.   California Constitution, Article I, Section 1
All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

13.   CA Civ Code 51
(a) This section shall be known, and may be cited, as the Unruh Civil Rights Act.
(b) All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

14.   CA Civ Code 43
Besides the personal rights mentioned or recognized in the Government Code, every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations.

15.   Plaintiff vigorously alleges harmful and malicious physical injury and physical sickness, and continuing, violations

4

of his California Constitutional, personal, civil, and Code 290 rights, and of his Americans with Disabilities Act right to access public accommodations.

16.   Plaintiff has also suffered great and continuing general damages in California, including but not limited to loss of reputation, shame, mortification, and hurt feelings.

17.   Defendant's rudimentary due process and other violations have caused, and continue to cause, great and debilitating physical injury, physical illness and suffering by Plaintiff, due to Defendant's mental anguish and intentional infliction of emotional distress.

18.   The use of the term "privacy right(s)" alleges all elements of privacy rights violations in California, including but not limited to: Those four types are 1) intrusion on a Plaintiff's seclusion or solitude; 2) public disclosure of embarrassing private facts about a person; 3) publicity that places a person in a false light in the public eye; and 4) appropriation, for the defendant's advantage, of Plaintiff's name or likeness.

19.   The use of the term "Fraud" alleges all essential elements of civil fraud in California, which give rise to the tort action for deceit, are:

> misrepresentation (false representation, concealment,
> or nondisclosure); (b) knowledge of falsity (or
> "scienter"); (c) intent to defraud, i.e., to induce

reliance; (d) justifiable reliance; and (e) resulting damage.

20.   Hedonic damages, one component of suffering, are fully imputed and are alleged thereto against all Defendants at all times for abject denial of rudimentary due process, privacy, civil, disability and California inalienable rights.

21.   Defendant's outrageous defamations and other violations were willful, knowing, intentional, and were the proximate and/or legal cause of great and continuing physical injury and physical sickness experienced by, and damages to, Plaintiff.

22.   Defendants knowingly acted with actual malice, arbitrarily and capriciously, and in doing so, have denied Plaintiff his protected, guaranteed rights.

23.   The Counts herein pertain to the specified Defendants for each Count, who all knew, or should have known, of the wrongs and violations they committed with hostile disregard for the law and for the truth of the matter.

## RECITATION OF INDISPUTABLE FACTS

24.   Plaintiff Hann is a 100% disabled retiree, who has been exceptionally active in North American magician communities (MCs), seemingly being well liked among dealers, professionals, amateurs and hobbyists alike.   He has attended innumerable National Conventions over the years, with an unblemished record with no scintilla of any wrongdoing, ever.   He has purchased about $75,000 of magician tricks and equipment in recent years, hoping for a

6

long and happy 25-year continued retirement, including significant participation in the North American MC and MO's as an ongoing centerpiece.

25.   Plaintiff's disability use of public accommodations, therapeutic enjoyment of life, and expected enjoyment for perhaps 25 more years, of magicians, the magician community (MC) and of the MO's, has been denied and decimated by Defendants.  The Palm Springs Magic Club meets at the City of Palm Desert and Recreation District owned and operated Portola Community Center.  Defendant SAM even returned Plaintiff's deposit, pre-paid two years prior, for its 2022 National Convention, held in a large hotel.

26.   Defendants International Brotherhood of Magicians (IBM) and Society of American Magicians are essentially the only, and by far the largest, Magician Organizations (MOs) covering, bringing magicians together, and servicing the North American cohort.  They are monopolistic in character; virtually all magicians, who wish to be active and/or connect to any extent in the North American MC, are members of one or both MO's.  Should a member be terminated from a local affiliated Club, there would be little elsewhere to serve as a substitute.

27.   The Defendant MO's are indisputably octogenarian or nearly octogenarion in nature.

28.   The Defendant MOs are recreational in nature, and make frequent use of public accommodations, including but not limited to those protected by the ADA, as described:
ADA Title III: Public Accommodations:  Title III covers businesses and nonprofit service providers that are public accommodations, privately operated entities offering certain types of courses and examinations, privately operated transportation, and commercial facilities. Public accommodations are private entities who own, lease, lease to, or operate facilities such as restaurants, retail stores, hotels, movie theaters, private schools, convention centers, doctors' offices, homeless shelters, transportation depots, zoos, funeral homes, day care centers, and recreation facilities including sports stadiums and fitness clubs.

29.       Public accommodations must comply with basic nondiscrimination requirements that prohibit exclusion, segregation, and unequal treatment.

30.   It is universally recognized that the Defendant MOs are primarily involved, in large part, in educational groups, workshops teachings, instructional convention gatherings, teaching lectures, how to videos, etc., constituting business establishment promotion in individual and group education, and in commercial activities such as commercial marketing support of magic information, magic equipment and tricks, and paid educational growth among its members.   Various scholarships are routinely offered.   This has been admitted by the SAM.

31.   Socialization is a hallmark of MO's, and paramount to maintaining and improving health, particularly among the senior age range to which most, including Plaintiff, populate.   This socialization is even more so in light of Plaintiff's full disability.

32.   The Defendant MO's happily welcome, and speedily admit to membership, a vast cross section of magicians and enthusiastics, filly endorsing adult rape and incest, serial & mass murderers, domestic abusers, drug lords, arsonists, child abusers, Ponzi scheme perpetrators akin to Bernard Madoff, aggravated assaulters, gang violence convicts, violent assaulters, and so forth.

33.   The Defendant MO's have longstanding and exceptionally intricate By-Laws, granting very specific due process rights to their Members for a wide variety of processes.

34.  Plaintiff began his magician career in about 1962, and member and an active, contributing participant in Magical Organizations (MO's) since 1966.

35.   During those 56+ years, Plaintiff has been honored and has an exemplary, impeccable record in and around MO's, with absolutely no blemish of any kind.   In 2019, Plaintiff was welcomed to and honored by the Annual Conventions as a "VIP attendee", having made a significant financial contribution to the IBM, which the IBM gladly took.

36.   The Defendant SAM web site prominently displays the following: Who Should Become a Member?
The S.A.M. is for all people interested in the art of magic. This includes collectors, historians, hobbyists, and enthusiasts, as well as professional performers.   This has proved to be untrue.

37.  In 2017, Plaintiff promoted, championed, and worked diligently in front and behind the scenes to bring about the SAM Assembly 302 of the Palm Springs Magic Club, including paying the Charter fee out of his own pocket.  He was elected SAM Secretary of the Palm Springs Magic Club, and published monthly reports for the MUM, the monthly magazine for the entire SAM.  He recruited new members for the SAM, resulting in the Palm Springs Magic Club being awarded the prestigious Leipzig award for greatest member increase.  He has been widely commended and appreciated for his enthusiasm and activities, and great joy in all thigs magic.

38.  The purported, but clearly self-stylized "Palm Springs Magic Club", has By-Laws but no apparent legal structure, being a group of various magicians and enthusiasts banding together.

39.  On or about June, 2020, with no advance notice, Plaintiff became aware of a communication from Defendant IBM, advising him that he had been expelled for a secretive policy which does not apply to Hann, and which is in blatant violation of CA Code 290.

40.  Shortly thereafter, Plaintiff became aware of a purported, but non-compliant and wholly improper, "complaint" with conclusory and unsupported innuendo and allegations from Defendant SAM, advising him of his immediate suspension for purported but undocumented "extreme and serious" conduct, and declared Defendant's right to suspend Plaintiff for 1) being a CA Code 290 Registrant, and other completely undocumented and vague historical reasons, and the right for Plaintiff to "answer".

41.  The California Megan's law cited by Defendant SAM reads in part as follows: (j) (1) A person is authorized to use information disclosed pursuant to this section only to protect a person at risk.
(2) Except as authorized under paragraph (1) or any other provision of law, use of any information that is disclosed pursuant to this section for purposes relating to any of the following is prohibited:
(A) Health insurance.
*(B)  Insurance.*
(C) Loans.
(D) Credit.
(E) Employment.
*(F)  Education, scholarships, or fellowships.*
*(G)  Housing or accommodations.*

9

*(H) Benefits, privileges, or services provided by any business establishment . . . . .*

(4) (A) Any use of information disclosed pursuant to this section for purposes other than those provided by paragraph (1) or in violation of paragraph (2) *shall make the user liable for the actual damages, and any amount that may be determined by a jury or a court sitting without a jury, not exceeding three times the amount of actual damage,* and not less than two hundred fifty dollars ($250), and attorney's fees, exemplary damages, or a civil penalty not exceeding twenty-five thousand dollars ($25,000).

42.  Defendants have never cited any specific person as being "at risk", and no risk has ever been shown in Plaintiff's 56 years in the MC.

43.  Defendant SAM later paid and retained a Hearing Officer, who eventually resigned on the eve of a scheduled Hearing.  No reason has been given for that resignation.

44.  Later, in the Fall of 2020, Defendant SAM paid and retained Defendant Bernard L. Pylitt, who promulgated a Hearing without permitting any pre-trial motions or discovery, and who permitted extremely limited and surprise testimony.  Within hours of the Hearing, Pylitt submitted a report including facts not in evidence, and used conclusory and completely undefined and amorphous reasons such as "Conduct Unbecoming", and "not of good character".

45.  The self-styled Palm Springs Magic Club, intimately acquainted with Plaintiff, testified that "Gary, you have done nothing wrong", and that "(Hann) volunteers for everything!"

46.  A standard of "Conduct Unbecoming" is used only in highly regulated professions which have a significant obligation to the public, such as lawyers, the military, and education.  The Supreme Court of the United States (SCOTUS), has declared "Conduct Unbecoming" as a "catchall phrase", applicable to Boards Of Education, the Military, and Lawyers.

47.  Plaintiff properly and timely petitioned Defendant SAM for an appeal, but has been wholly and completely ignored by SAM, yet no appeal has taken place, despite Plaintiff's reminders.

48.  Plaintiff affirmatively declares that he has never had any illicit or prohibited contact with any minor, ever, nor has any such conduct been alleged against him at any time.

10

49. Plaintiff values his participation in the MO's at $25,000 per year, noting that he has been fully and universally shunned and ignored by Defendants and by all of their members. He first became aware of the physical injury and physical sickness during the summer of 2020, when nobody would respond to any of his calls or E-mails, and when he was cut off from all communications with Defendants, and with former good and longstanding friends, who began treating him like the proverbial plague.

**COUNT I – PAST, PRESENT AND FUTURE PERSONAL PHYSICAL DISABILITY INJURY/PHYSICAL SICKNESS AGGRAVATION AND DEBILITATING INJURY DUE TO DEFENDANT'S ILLEGAL ACTIONS OR INACTIONS; VIOLATIONS OF PLAINTIFF'S DISABILITY RIGHTS TO RECREATION AND TO PUBLIC ACCOMMODATIONS.**

50. Hann incorporates Paragraphs 1 to 49 of this Complaint as though fully set forth herein, supra.

51. As described in the Undisputed Facts section, the MO's utilize public accommodations on a frequent and prolific basis for the benefit of members.

52. Disabled Plaintiff has, over the decades, frequently utilized this vast array of public accommodations, and contributed to theirs and to the MO's economy, but now is discriminatorily denied this disability benefit for his remaining lifetime.

53. These denials have, willfully and intentionally, with malice aforethought, caused great and continuing harm to Plaintiff's health and causing physical injury, physical sickness, such right being protected by Title III of the ADA.

**COUNT II – DENIAL OF THE DUE PROCESS IN THE MO'S OWN BY-LAWS**

54. Hann incorporates Paragraphs 1 to 53 of this Complaint as though fully set forth herein.

55. After Plaintiff had been a longstanding member, Defendant IBM has instituted a secretive and arbitrary and capricious ex-post facto blanket policy, which does not apply to Plaintiff, and for which no hearing or process of any kind occurred.

56. Such a change in policy is blatantly unlawful in California, wildly unfair to Plaintiff, and demonstrates that Defendant IBM may and does institute any method whatever of eliminating any one or more members as it wishes, without justification or recourse.

57. Defendant SAM accepted an unsigned, undated, unserved, purported "complaint" regarding Plaintiff, which innuendo complaint did not supply any facts or make any charges, in abject violation of the mandatory procedures meticulously described in Article IX of its own By-Laws.

58. Defendant SAM then made an unsupported and conclusory declaration that the purported complaint was "extreme and serious", despite Plaintiff's advocacy and cheerleading for Defendant SAM, and his unblemished, active and contributory membership.

59.  Defendant SAM refused to acknowledge or consider any By-Laws issues brought by Plaintiff, and eventually contracted, paid and retained a Hearing Officer, who was not impartial as required, but rather was beholden only to Defendant SAM.

60.  After the exchange of significant process and of a number of E-mails requesting fairness and clarification, the said Hearing Officer resigned on the eve of the scheduled Hearing.  Nobody ever responded to requests for the reason for the resignation, likely because that attorney viewed the process as arbitrary, capricious, and unfair to Plaintiff.

61.  Defendant Pylitt was then hired, presumably instructed, and paid by Defendant SAM.  Defendant Pylitt prohibited any pre-hearing motions or discovery, set a time limit of one hour, and required an amorphous and completely undefined standard of "good character" and no "conduct unbecoming" to be shown by Plaintiff.

62.  Defendants SAM and Pylitt wrongly, and with intent to malign and harm Plaintiff, clearly took jurisdiction over Plaintiff's entire life, did not swear any witnesses, and did not produce any documentary evidence to justify action against Plaintiff, nor were any verifiable violations ever noted within the MC and MOs.

13

63.   At the Hearing, after about six months had elapsed, Defendant SAM suddenly, and by surprise, produced a purported "policy", which is inapplicable to and never violated by Plaintiff.

64.   The undefined and amorphous standards applied by Defendants SAM and Pylitt, "conduct unbecoming" and "good character", are absurd, as they could easily be applied to some point or points in any member's entire life, and easily and summarily result in the expulsion of any or all of its members.

65.   Defendant Pylitt did not consider any of the documentary evidence that Plaintiff put on the record.

66.   Defendant Pylitt's "Hearing Officer Finding" was apparently pre-prepared, replete with conclusory and inadmissible information, and not surprisingly, found Plaintiff culpable for a number of purported and contrived "reasons", despite that Plaintiff has not caused a whit of harm to anyone or anything in the MC and MOs, and was deemed in testimony as "Gary, you have done nothing wrong".

67.   Defendant Pylitt knew the overt unfairness of the proceeding and of his self-labeled, regurgitated as instructed "findings", but rather did as ordered and paid for by his client, wrongfully eviscerating Plaintiff to reach the desired result.

68.   Defendant Pylitt was a licensed attorney, which requires various duties and obligations including fundamental fairness; he

presumptively knew the law and the acceptable standards, and in fact was mandated to know the applicable statutes and case law.

69. Such actions or inactions by Defendants SAM and Pylitt were and are in gross violation of any concept of rudimentary due process and fundamental fairness.

70. Defendant SAM denied Plaintiff a record of the proceeding, which were recorded at no cost to them.

71. Plaintiff submitted a timely and proper appeal by right, but has been totally and completely ignored and no mandatory appeal has been responded to or had.

**COUNT III – BREACH OF CONTRACT**

72. Hann incorporates Paragraphs 1 to 74 of this Complaint as though fully set forth herein.

73. Plaintiff has pre-paid various dues and fees to the MO's, including the Palm Springs Magic Club, but none have been refunded to him.

74. Plaintiff enjoys an implied contract that, in exchange for his active and honorable participation and regular payment of dues and fees, that he will be afforded the guarantees granted by the MO's in their own By-Laws, and the guarantees protecting him under applicable state and federal law, and receive the same benefits as all other members.

75.   Defendants have denied Plaintiff the said protections and paid benefits, and rather have treated Plaintiff as a pariah, and are thus in overt breach of their clearly implied contracts.

**COUNT IV – INVASION OF PRIVACY; INTRUSION ON PLAINTIFF'S SECLUSION AND SOLITUDE, AND FALSE LIGHT, BY DEFENDANT SAM AND ITS MEMBER ASSEMBLY 302 PALM SPRINGS MAGIC CLUB.**

76. Hann incorporates Paragraphs 1 to 75 of this Complaint as though fully set forth herein.

77.   Plaintiff alleges all elements of the privacy tort of Intrusion upon Seclusion in California, one of several invasion of privacy torts; Defendants intentionally intruded upon Hann's solitude or the seclusion of another, or his private affairs or concerns, Defendant's intrusion was highly offensive to Hann as a reasonable person, and Defendant's intrusions caused Hann severe mental anguish or suffering.

78.  Defendant SAM published, across the entire open internet, a substantial amount of personal and detailed information about Plaintiff, without any affirmative permission or approval on his part.

79.   Such open, world-wide publication, caused Plaintiff's viciously hostile neighbor to make a purportedly anonymous contact with the Palm Springs Magic Club Assembly 302, threatening

blackmail, and which has caused and continues to cause Plaintiff ongoing and irreparable harm.

80.    The said neighbor was documented as having placed a number of phone calls regarding Plaintiff to Plaintiff's local authorities, just before contacting the Palm Springs Magic Club; he has viciously and relentlessly harassed, accosted and humiliated Plaintiff, as a direct and proximate result of the unauthorized publication of Plaintiff's information, which badly and harmfully intruded on Plaintiff's seclusion and solitude.

81.    Defendant SAM, upon information and belief, spread deleterious and prohibited information, to many persons.

82.    Including but not limited to their fraudulent "complaint", the SAM Palm Springs Assembly 302 used the said extortion against it to inform all of its members and participants of a prohibited multitude of allegations and untruths that held Plaintiff in an utterly false light, and maligned and vilified Plaintiff for purported past action(s) which had been viewed by all as beneficent at the time they occurred, and were beneficent.

**COUNT VI — BLATANT VIOLATIONS OF CA CODE 290, AND DENIAL OF CALIFORNIA INALIENABLE PERSONAL RIGHTS.**

83.    Hann incorporates Paragraphs 1 to 82 of this Complaint as though fully set forth herein.

84.   Defendants have not read, or have lawlessly misapplied, that CA Code 290 protects Plaintiff from any misuse of the information it provides, and particularly notes Defendant's primary functions of education, scholarships and their existence as business establishments, as excluded from any discrimination.

85.   Defendants, instead, have illegally and discriminatorily, entirely evicted/expelled Plaintiff, when their only lawful action was the opposite, to protect "a person" (not all persons anywhere any time) they deemed at risk.  No such person has been identified.

86.   A blanket protection of everyone in Defendant's organizations and sphere of influence, such as the expulsions that occurred, is exactly the type of knee-jerk abuse/violation that Code 290 does not permit, and in fact absolutely prohibits, invoking up to treble damages.

87.   Code 290 protects Plaintiff from Defendants; Defendants must take specific protections if they consider "a person" at risk, by any unobtrusive manner or means, such as requiring minors to be accompanied by their parent, or surreptitiously and unobtrusively keeping a watch on Plaintiff, a person who, by their own testimony, has "done nothing wrong".

88.   Defendants are denied any latitude whatever to impose any sort of "sentence" on Plaintiff for his past, nor for his 100%

unblemished and honorable behavior in and around Defendants for his entire lifetime.

89.   In their wrongful and prohibited actions or inactions, Defendants have denied Plaintiff California's constitutionally assured happiness and constitutionally mandated privacy, and protection from the massive personal insult they inflicted, from the defamation that has occurred, and from injury to his personal relations, all of which they deeply and seriously affected and maligned in Plaintiff's life.

90.   It is not the place for Plaintiff to instruct Defendants in advance on the law, it is Defendant's place to obey it assiduously.

91.   As a proximate result of their outrageous expulsions and wrongs inflicted on Plaintiff, Defendants have caused Plaintiff great and continuing harm, and Plaintiff has been distraught.

**COUNT VII – HEDONIC LOSSES/LOSS OF ENJOYMENT OF LIFE DAMAGES FOR PHYSICAL INJURY AND PHYSICAL SICKNESS DUE TO INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY ALL DEFENDANTS.**

92.   Hann incorporates Paragraphs 1 to 91 of this Complaint as though fully set forth herein.

93.   Hann additionally alleges all elements of intentional infliction of emotional distress in California; Defendant's lawless conduct was outrageous and was intended to cause Hann

emotional distress, Defendants acted with reckless disregard of the probability that Hann would suffer emotional distress, Hann suffered severe emotional distress; and Defendant's conduct was a substantial factor in causing Hann's severe emotional distress.

94. Defendant's unlawful conduct was 'outrageous' because it was so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' And the defendant's conduct was 'intended to inflict injury or engaged in with the realization that injury will result.' " (Hughes v. Pair (2009) 46 Cal.4th 1035, 1050-1051 [95 Cal.Rptr.3d 636, 209 P.3d 963]).

95. Plaintiff seeks hedonic damages for his significant loss of quality time, when he should be enjoying a peaceful retirement, and his necessarily intense involvement in overseeing and protecting his interests in these proceedings.

**RELIEF REQUESTED**

96. Plaintiff Hann hereby requests that this Honorable Court forthwith find and order forthwith that Defendants:

a) Have violated Hann's federal, state and civil rights, and must pay Hann actual, non-economic damages for past, present and future personal physical injury/physical sickness of an absolute minimum of $750,000, plus purchase/reimbursement to Hann of $75,000 for his now useless magic trick inventory, acquired at

20

great cost in anticipation of a long, happy and involved retirement in magic communities, as determined by a competent jury which could be trebled under CA Code 290, plus interest and costs;

    b)  Submit to a trial by a competently selected jury;

    c)  Be required to readmit Hann to full membership in good standing, or be enjoined and prohibited from operating in any capacity in the State of California;

    d)  Serve all processes and pleadings through the Court's electronic filing system and by receipted E-mail.

Dated this 23rd of May, 2022.

Gary S. Hann, Plaintiff

21